IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOSEPH GIUFFRIA                                                                               PLAINTIFF

V.                                                                  CAUSE NO. 3:18-CV-406-CWR-LGI

PENNSYLVANIA MANUFACTURERS                                                          DEFENDANTS
INDEMNITY COMPANY; GALLAGHER
BASSETT SERVICES, INC.

## ORDER

Before the Court are the defendants' cross-motions for summary judgment. Docket Nos. 66 & 68. On review, PMIC's motion will be granted and Gallagher Bassett's motion will be denied.

I.      **Factual and Procedural History**

Joseph Giuffria commenced this suit against Pennsylvania Manufacturers Indemnity Company (PMIC) and Gallagher Bassett Services, Inc. He claimed that the companies had denied his workers' compensation claim in bad faith.

PMIC and Gallagher Bassett have a written contract. In it, they agreed to mutually indemnify each other from losses or exposure arising from one party's willful or negligent acts. The contract is governed by Pennsylvania law.

Upon receiving Giuffria's lawsuit, Gallagher Bassett hired the Bradley Arant law firm to defend itself and PMIC. But during the litigation it became clear that Giuffria was claiming bad faith of both Gallagher Bassett *and* PMIC. Apparently, Giuffria thought PMIC had terminated certain prescriptions without cause.[1]

---

[1] Gallagher Bassett and PMIC continue to dispute which of them terminated the prescriptions without cause.

PMIC became worried that it had exposure to Giuffria's suit. It hired the McCraney Montagnet law firm to defend its own interests. Through this new counsel, PMIC asked Gallagher Bassett whether Gallagher Bassett was still providing a defense and indemnity.

The answer was "yes and no." Yes, Gallagher Bassett was still paying Bradley Arant to defend itself and PMIC in the bad faith litigation. That would continue. But no, Gallagher Bassett would not indemnify PMIC for a decision PMIC itself made about terminating medication. It cited the mutual indemnification clause.

PMIC did not like that uncertainty. It directed the McCraney Montagnet firm to continue to represent PMIC's interests.

The Giuffria case eventually settled. Gallagher Bassett asked PMIC to contribute to the settlement, but PMIC declined. Gallagher Bassett paid the entire amount.

PMIC's law firm, McCraney Montagnet, then sent Gallagher Bassett a ~$43,000 bill for services rendered. Gallagher Bassett declined to pay. PMIC's breach of contract cross-claim followed.

The parties characterize their dispute very differently. Gallagher Bassett says it's a simple contractual indemnification issue governed by Pennsylvania law: because the contract doesn't require indemnification of PMIC's exposure caused by PMIC's own medication-termination decision, and in fact doesn't provide for indemnification of attorney's fees at all, Gallagher Bassett is entitled to summary judgment. To PMIC, however, the case presents a conflict-of-interest issue arising under Mississippi law: as soon as Gallagher Bassett reserved the right to not indemnify PMIC, it says, PMIC was entitled to hire separate, independent counsel at Gallagher Bassett's expense. *See Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1064 (Miss. 1996).

**II.     Discussion**

With the summary-judgment standard well-known, the Court will move directly into the legal analysis.

On review, the Court is unable to discern a breach of the parties' written contract. The record shows that Gallagher Bassett performed its obligations under the contract by settling Giuffria's claim in full. (It may believe that it "over-performed" on the contract by paying for losses allegedly caused by PMIC's own negligence, but that is neither here nor there.) In addition, the contract's indemnification provision does not contemplate responsibility for attorney's fees. It follows that PMIC cannot recover the money it spent on lawyers by pointing to the parties' contract.

The more difficult question is whether PMIC can get its fees paid on an extra-contractual basis, applying the principles arising from the Mississippi Supreme Court's *Moeller* decision. *Moeller* sets forth the following:

> The liability insurance company has an absolute duty to defend a complaint which contains allegations covered by the language of the policy; it clearly has no duty to defend a claim outside the coverage of the policy. What about the special situation where the allegations of the complaint are covered by the liability policy, but the facts are such that it may very well develop at trial that the conduct of the insured was not covered by the policy? . . . Unquestionably, the insurance carrier has a right to offer the insured a defense, while at the same time reserving the right to deny coverage in event a judgment is rendered against the insured.
>
> When defending under a reservation of rights, however, a special obligation is placed upon the insurance carrier. While this Court has not been called upon to address this issue, other jurisdictions have generally held that in such a situation, not only must the insured be given the opportunity to select his own counsel to defend the claim, the carrier must also pay the legal fees reasonably incurred in the defense.

707 So. 2d at 1069 (citations omitted). The court added that defense "counsel must be careful at the time he is asked to represent the insurance carrier and the insured, and if there is any reason

indicating a possible conflict of interest at the time of his employment, he should under no circumstances undertake to represent them both." *Id.* at 1070.

Gallagher Bassett argues that *Moeller* doesn't apply because the contract is governed by Pennsylvania law. In a similar conflict, however, the Fifth Circuit ruled that Mississippi law trumps the choice of law provision in the parties' contract. *See Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 597-99 (5th Cir. 2008). In addition, PMIC has presented a good argument that Pennsylvania law has similar, perhaps even broader anti-conflict of interest requirements. *See Transportation Ins. Co. v. Motorists Mut. Ins. Co.*, No. 3:14-CV-1438, 2017 WL 75580, at *3 (M.D. Pa. Jan. 9, 2017) (collecting cases).

Gallagher Bassett then contends that the *Moeller* principle doesn't apply because this isn't an insurance case. *But see Krueger Assocs., Inc. v. ADT Sec. Sys.*, No. CIV.A. 93-1040, 1994 WL 709380, at *5 (E.D. Pa. Dec. 20, 1994) ("While this is not an insurance case *per se,* this concept is appropriate in the matter at hand."). Perhaps its best argument is that none of the *Moeller* cases had mutual indemnification provisions like the one found in the parties' contract. The problem is that the structural principles motivating *Moeller*—"to enforce [Mississippi's] conflict of interest rules in litigation in order to protect parties and the judicial process"—are directly applicable here despite the mutual indemnification provision. *Hartford*, 524 F.3d at 599.

As PMIC's brief explains, "Bradley Arant could not take a position adverse to Gallagher," and "Gallagher would benefit from a determination that Giuffria's losses were caused solely by" PMIC. Docket No. 69 at 4. The unavoidable risk was that Bradley Arant "might conduct the defense in such a manner" that favored assessing the prescription-termination

4

damages (or other losses) against PMIC, rather than Gallagher Bassett. *Moeller*, 707 So. 2d at 1069. A later claim for contribution from Gallagher Bassett would have been unfair.

Finally, Gallagher Bassett argues that PMIC should have waited until an "actual conflict" arose before hiring separate counsel. Docket No. 72 at 10. It has not pointed to authority supporting that proposition. A leading treatise indicates that at the moment Gallagher Bassett continued to reserve its rights, *see* Docket No. 68-4 at 2, PMIC was justified in hiring private counsel to protect itself from a conflicted process. *See* Jackson et al., 5 Encyclopedia of Miss. Law § 40:67 (2d ed. Mar. 2017).

This is a difficult case. Despite all of the above, Gallagher Bassett has a compelling argument that PMIC's decision to hire separate counsel was entirely gratuitous, given its lack of liability at the end of the case. The undersigned respectfully disagrees, believing that the risk had to be measured from the reservation of rights, but reasonable jurists on the appellate bench very well might see it differently. As it does in all cases, therefore, the Court encourages the parties to continue to talk and see whether they can resolve this dispute, and the modest sum at its heart, without further litigation.

### III.    Conclusion

PMIC's motion is granted. Gallagher Bassett's motion is denied. A separate Final Judgment shall issue this day.

**SO ORDERED**, this the 19th day of April, 2021.

s/ Carlton W. Reeves<br>UNITED STATES DISTRICT JUDGE